UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CINDY ESTRADA FONTANEZ,

    Plaintiff,

v.                                                Case No. 8:21-cv-2765-AAS

KILOLO KIJAKAZI,
Acting Commissioner,
Social Security Administration,

    Defendant.
_____/

## ORDER

Cindy Estrada Fontanez requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claims for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the parties' memoranda (Docs. 16, 17), the Commissioner's decision is **AFFIRMED**.

I.    **PROCEDURAL HISTORY**

Ms. Estrada Fontanez applied for DIB and SSI, alleging disability beginning on January 23, 2019. (Tr. 207–17). Disability examiners denied Ms. Estrada Fontanez's applications initially and after reconsideration. (Tr. 141–

1

60). At Ms. Estrada Fontanez's request, the ALJ held a hearing on July 21, 2020. (Tr. 31–57, 162–69). The ALJ issued an unfavorable decision to Ms. Estrada Fontanez on January 14, 2021. (Tr. 12–30).

On October 27, 2021, the Appeals Council denied Ms. Estrada Fontanez's request for review, making the ALJ's decision final. (Tr. 1–6). Ms. Estrada Fontanez requests review of the Commissioner's final decision. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Background

Ms. Estrada Fontanez was fifty-six years old on her alleged onset date of January 23, 2019, and on the date she applied for Social Security disability benefits, March 12, 2019. (Tr. 208, 212). Ms. Estrada Fontanez completed two years of college and has past relevant work experience as a fire alarm dispatcher. (Tr. 23, 244).

### B.    Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] she is not disabled. 20 C.F.R. §§ 404.1520(b),

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572, 416.972.

2

416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC). *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ determined Ms. Estrada Fontanez did not engage in substantial gainful activity since January 23, 2019, the alleged onset date. (Tr. 18). The ALJ found Ms. Estrada Fontanez had the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD), chronic venous insufficiency, and obesity. (Tr. 18). But the ALJ found none of Ms. Estrada Fontanez' impairments or any combination of her impairments met or medically equaled the severity of an impairment in the Listings. (Tr. 19).

3

The ALJ found Ms. Estrada Fontanez had the RFC to perform sedentary work[3] except:

> she can occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds; she can sit for a period of 6 hours, stand for a period of 2 hours, walk for a period of 2 hours, and she can push/pull as much as she can lift/carry; she can frequently balance and stoop; she can occasionally climb ramps/stairs, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; she can tolerate occasional exposure to unprotected heights, moving mechanical parts, and dust, odors, fumes, and pulmonary irritants; and she is limited to frequent exposure to humidity/wetness, extreme cold, extreme heat, and vibration.

(Tr. 19).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Estrada Fontanez could perform her past relevant work as a fire alarm dispatcher. (Tr. 23). Alternatively, the ALJ determined Ms. Estrada Fontanez could perform other jobs existing in significant numbers in the national economy. (Tr. 23–24). Specifically, Ms. Estrada Fontanez could perform the occupational requirements of a telephone solicitor, receptionist, and data entry clerk. (Tr. 24). As a result, the ALJ found Ms. Estrada Fontanez

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

not disabled from January 23, 2019, through the date of the ALJ's decision, January 14, 2021. (Tr. 24).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and

unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

**B.     Issue on Appeal**

Ms. Estrada Fontanez's sole issue on appeal is whether the ALJ erred in the RFC assessment by failing to address Ms. Estrada Fontanez's need to elevate her legs resulting from her obesity, venous insufficiency, and edema. (Doc. 16, pp. 4–6).

As noted above, at step four of the sequential evaluation process, the ALJ assesses a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. The RFC is "the most" a claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To determine a claimant's RFC, the ALJ must use all relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(e)); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Here, the ALJ discussed evidence related to venous insufficiency and swelling of the lower extremities. First, the ALJ acknowledged Ms. Estrada Fontanez's testimony that "she suffered from chronic venous insufficiency with pain and swelling of her legs, ankles, and feet" and "that she needed to elevate her legs above her heart three to four times a day for about 25 minutes to an

6

hour." (Tr. 21). The ALJ also found that the record indicated diagnoses of peripheral venous insufficiency, obesity, and lower extremity edema. However, the ALJ noted that "physical examination notes did not indicate any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." (Tr. 21). The ALJ found that Ms. Estrada Fontanez's obesity was "constantly monitored and conservatively treated by recommendation of dietary restriction and exercise." (Tr. 21, 384, 388, 564, 570, 575, 580, 584, 588, 593, 598–99). Regarding Ms. Estrada Fontanez's diagnoses of lower extremity edema and chronic venous insufficiency, the ALJ noted that "peripheral vascular examination of the lower extremities was consistently unremarkable with the exception of prominent bilateral veins and edema." (Tr. 22, 318, 323, 331, 608–09, 613–14). Treatment notes revealed Ms. Estrada Fontanez "had normal bilateral femoral pulse, popliteal pulse, dorsalis pedis pulse, and posterior tibial pulse[,]" and "[m]usculoskeletal examination notes consistently indicated full strength, normal gait/station, and normal bulk/tone." (Tr. 22, 318–19, 323, 331–32, 337, 339, 460, 462, 464, 466, 468, 550, 558, 563, 569, 574, 579, 583, 587, 592, 596–97, 608–09, 613–14, 622, 625, 628, 631, 634, 637, 640, 643, 646).

In addition to examination findings, the ALJ considered objective studies. The ALJ noted that although "IVC/iliac vein test in January of 2019 was limited due to body habitus and/or overlying bowel gas shadowing[,]" there

7

"was no evidence of deep vein thrombosis, no vein compression/increased velocities, and bilateral distal external iliac veins with continuous/augmentable flow." (Tr. 22, 319–20, 332–33, 619). The ALJ additionally noted that "[r]egular ultrasounds and venous reflux/map of the bilateral lower extremities were unremarkable with the exception of dilated incompetent venous valves with reflux." (Tr. 21–22, 321, 332–34, 481, 609, 611, 617, 620, 767).

The ALJ also considered an October 22, 2019 consultative examination revealing no joint tenderness, swelling, erythema, heat, crepitus, or deformity. (Tr. 22, 491). Additionally, "[p]eripheral-vascular examination notes indicated bilateral 4/4 radial pulse of the upper extremities, bilateral 4/4 dorsalis pulse of the arterial lower extremities, and bilateral 4/4 posterior pulse of the arterial lower extremities" and "[v]enous examination notes indicated absent bilateral varicosities, chronic brawny edema, skin ulcers, or stasis dermatitis of the bilateral lower extremities." (Tr. 22, 492). Ms. Estrada Fontanez demonstrated full 5/5 strength of all extremities, normal sensory, normal posture and gait, and "walked with ease without an assistive device." (Tr. 22, 492–33).

Finally, the ALJ noted treatment had been conservative consisting of "monitoring, medication, compression stockings, and recommendation of dietary restriction and exercise." (Tr. 22, 319, 332, 564, 570, 584, 588, 598–99).

Ms. Estrada Fontanez argues the ALJ erred by not including her need to elevate her legs in the RFC because "the medical record clearly documents [Ms. Estrada Fontanez] suffers from chronic venous insufficiency resulting in lower extremity swelling and edema that is treated and managed, at least in part, by leg elevation." (Doc. 16, p. 8). However, Ms. Estrada Fontanez's diagnoses of edema and chronic venous insufficiency alone do not establish functional limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").

Moreover, Ms. Estrada Fontanez has not identified evidence establishing work-related limitations beyond those included in the ALJ's RFC assessment. Ms. Estrada Fontanez points to two treatment notes from August 21, 2019, and September 25, 2019, from her treating cardiologist, Hoshedar Tamboli, M.D., and respective nurse practitioner, Kalley Clark, APRN, advising that she should elevate her legs. (Doc. 16, p. 8; Tr. 551, 559). However, those same treatment notes also included recommendations to "[c]ontinue diuretics, sodium/fluid restrion [sic]," and to lose weight. (Tr. 551, 559). Moreover, the two treatment notes did not specify the frequency with which Ms. Estrada Fontanez should elevate her legs and whether it would impact her ability to complete a normal workday and perform sedentary work as provided in the

9

RFC. *See, e.g.*, *Coppedge v. Astrue*, No. 3:08-cv-293-J-HTS, 2009 WL 347781, at *2 (M.D. Fla. Feb. 11, 2009) ("The uncertainty of the opinions, as well as their failure to indicate either the frequency or duration of the listed accommodations (e.g., how often the claimant would need to raise her legs or for what length of time she would have to rest), undermines the assertion they should have been incorporated into an RFC finding."). And contemporaneous examinations revealed normal balance, gait and stance, normal pulses, normal musculoskeletal system, and no sensory abnormalities, despite edema being present. (Tr. 550, 558).

To the extent Ms. Estrada Fontanez argues the ALJ erred by failing to give substantial weight to the "treating source opinion" that she "should elevate her legs to manage symptoms of chronic venous insufficiency and chronic edema[,]" (Doc. 16, pp. 11–12), the treatment recommendation does not constitute a "medical opinion" as contemplated by the revised Social Security Regulations governing the articulation of medical opinions for claims filed on or after March 27, 2017.[4] *See* 20 C.F.R. § 404.1513(a)(3) (a "medical opinion" does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment

---

[4] Under the revised regulations, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 1520c(a), 416.920c(a).

10

prescribed with response, or prognosis"); *see also Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH, 2021 WL 2634325, at *5–6 (M.D. Fla. June 25, 2021) (the ALJ did not err by failing to weigh "opinions" where the claimant pointed to nothing in the medical evidence "besides 'medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis' *see* 20 C.F.R. § 404.1513(a)(3), or the claimant's own subjective complaints, none of which constitute 'medical opinions' under the Social Security regulations").

Additionally, some of the more recent treatment notes revealed no evidence of edema. (Tr. 563, 569, 574, 579, 583, 587, 652, 663, 716, 732, 741, 750). Indeed, while Ms. Estrada Fontanez points to the February 8, 2019, April 25, 2019, and July 25, 2019 treatments notes of Nurse Practitioner Samya Almoumani, ARNP, showing evidence of edema (Doc. 16, pp. 7–8), subsequent examinations consistently documented no edema. (*See* Tr. 592 (no edema on August 23, 2019); Tr. 587 (no edema on October 24, 2019); Tr. 583 (no edema on November 14, 2019); Tr. 579 (no edema on December 27, 2019); Tr. 574 (no edema on February 18, 2020); Tr. 569 (no edema on February 25, 2020); Tr. 563 (no edema on May 1, 2020)). And, as the ALJ noted, "[u]ltrasounds of the venous system in June of 2019 and February of 2020 revealed no evidence of deep vein thrombosis with good compressibility and good popliteal vein flow in both venous systems." (Tr. 21, 481, 767).

To the extent Ms. Estrada Fontanez cites her subjective complaints to support her need for leg elevation, (Doc. 16, pp. 6, 10), the ALJ noted Ms. Estrada Fontanez's subjective complaints and reasonably found her statements about the severity of her symptoms not entirely consistent with the record, for the reasons explained in the decision. (Tr. 21).

Ms. Estrada Fontanez's argument here is, in essence, that there is evidence in the record that could support a different RFC determination. This is outside of the scope of this court's review. *See Moore*, 405 F.3d at 1213 ("To the extent that *Moore* points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner. . . even if the evidence preponderates against the decision.") (citations and quotations omitted). The ALJ considered the entire record, and her RFC assessment is supported by substantial evidence.

Ms. Estrada Fontanez also argues the VE's testimony "does not constitute substantial evidence because ALJ must [sic] did not pose a hypothetical question which comprised all of Plaintiff's impairments[,]" specifically, Ms. Estrada Fontanez's need to elevate her legs. (Doc. 16, p. 10). However, an ALJ need not include impairments or limitations unsupported by substantial evidence in the hypothetical posed to the VE. *Crawford v. Comm'r*

*of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). Despite Ms. Estrada Fontanez's disagreement with the RFC, the ALJ's hypothetical question to the VE accurately included all of the limitations in the RFC assessment. (Tr. 19, 51). Therefore, the ALJ's reliance on the VE's testimony was proper.

Accordingly, the court finds that substantial evidence supports the ALJ's RFC assessment and her consideration of Ms. Estrada Fontanez's obesity, edema, and venous insufficiency.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and the Clerk is directed to enter judgment in favor of the Commissioner.

**ORDERED** in Tampa, Florida on February 14, 2023.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge